# IN THE UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

| | |
|---|---|
| NATIONAL PARKS CONSERVATION ASSOCIATION and SIERRA CLUB,<br><br>Petitioners,<br><br>v.<br><br>U.S. ENVIRONMENTAL PROTECTION AGENCY and LEE ZELDIN, in his official capacity as U.S. Environmental Protection Agency Administrator,<br><br>Respondents. | Case No. _____ |

## **PETITION FOR REVIEW**

Pursuant to Clean Air Act Section 307(b)(1), 42 U.S.C. § 7607(b)(1), Federal Rule of Appellate Procedure 15(a), and Tenth Circuit Rule 15, National Parks Conservation Association and Sierra Club hereby petition this Court for review of the United States Environmental Protection Agency's (EPA) final action entitled *Air Plan Disapproval; Colorado; Regional Haze Plan for the Second Implementation Period*. EPA published its final rule in the Federal Register on January 26, 2026. 91 Fed. Reg. 3048 (Jan. 26, 2026). A copy of EPA's final rule is attached as Exhibit A.

1

Dated March 4, 2026.

*s/ Michael Hiatt*
Michael Hiatt
Ameya Gehi
Earthjustice
1125 17th Street, Suite 1010
Denver, CO 80202
(303) 623-9466
mhiatt@earthjustice.org
agehi@earthjustice.org

*Attorneys for Petitioners National Parks Conservation Association and Sierra Club*

Matthew Gerhart
Sierra Club
1536 Wynkoop St., Suite 200
Denver, CO 80202
(303) 454-3346
matt.gerhart@sierraclub.org

*Attorney for Petitioner Sierra Club*

# **LIST OF RESPONDENTS UPON WHOM THE CLERK OF THE COURT SHOULD SERVE THIS PETITION**

Pursuant to Federal Rule of Appellate Procedure 15(c) and Tenth Circuit Rule 15.2, Petitioners list the following respondents requiring service of the Petition for Review:

Lee Zeldin
Administrator
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, NW
WJC Building North/South Room: 1101A
Washington, D.C. 20460

Pamela Bondi
Attorney General
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530

Correspondence Control Unit
Office of General Counsel (2311)
U.S. Environmental Protection Agency
1200 Pennsylvania Avenue, NW
Washington, D.C. 20460

*s/ Michael Hiatt*
Michael Hiatt

## CERTIFICATE OF SERVICE

I hereby certify that on March 4, 2026, the foregoing Petition for Review and the attached Exhibit A were electronically filed with the Clerk of Court of the U.S. Court of Appeals the Tenth Circuit through the appellate CM/ECF system.

*s/ Michael Hiatt*
Michael Hiatt

# EXHIBIT A

petition for judicial review may be filed, and shall not postpone the effectiveness of such rule or action. This action may not be challenged later in proceedings to enforce its requirements. (See section 307(b)(2).)

**List of Subjects in 40 CFR Part 52**

Environmental protection, Air pollution control, Incorporation by reference, Particulate matter.

Dated: January 14, 2026.

**Walter Mason,**
*Regional Administrator, Region 6.*

For the reasons stated in the preamble, the Environmental Protection Agency amends 40 CFR part 52 as follows:

## PART 52—APPROVAL AND PROMULGATION OF IMPLEMENTATION PLANS

■ 1. The authority citation for part 52 continues to read as follows:

**Authority:** 42 U.S.C. 7401 *et seq.*

### Subpart LL—Oklahoma

■ 2. In § 52.1920, in the table in paragraph (c) titled ''EPA Approved Oklahoma Regulations'', revise the entries for ''252:100–13–7'' and ''252:100–13–8'' under ''Subchapter 13'' to read as follows:

**§ 52.1920 Identification of plan.**

\* \* \* \* \*

(c) \* \* \*

### EPA Approved Oklahoma Regulations

| State citation | Title/subject | State effective date | EPA approval date | Explanation |
|---|---|---|---|---|
| \* | \* | \* | \* \* \* | \* |
| **Chapter 100 (OAC 252:100). Air Pollution Control** | | | | |
| \* | \* | \* | \* \* \* | \* |
| **Subchapter 13. Open Burning** | | | | |
| \* | \* | \* | \* \* \* | \* |
| 252:100–13–7 ... | Allowed open burning | 9/15/2022 | 1/26/2026, 90 FR [INSERT **FEDERAL REGISTER** PAGE WHERE THE DOCUMENT BEGINS]. | |
| 252:100–13–8 ... | Use of air curtain incinerators. | 9/15/2022 | 1/26/2026, 90 FR [INSERT **FEDERAL REGISTER** PAGE WHERE THE DOCUMENT BEGINS]. | |
| \* | \* | \* | \* \* \* | \* |

[FR Doc. 2026–01408 Filed 1–23–26; 8:45 am]
**BILLING CODE 6560–50–P**

---

## ENVIRONMENTAL PROTECTION AGENCY

### 40 CFR Part 52

[EPA–R08–OAR–2024–0607; FRL–12598–02–R8]

### Air Plan Disapproval; Colorado; Regional Haze Plan for the Second Implementation Period

**AGENCY:** Environmental Protection Agency (EPA).
**ACTION:** Final rule.

**SUMMARY:** The Environmental Protection Agency (EPA) is disapproving a regional haze state implementation plan (SIP) revision submitted in 2022 by the State of Colorado under the Clean Air Act (CAA or Act) and the EPA's Regional Haze Rule (RHR) for the program's second implementation period. Colorado's 2022 regional haze SIP revision addresses the requirement that states revise their long-term strategies every implementation period to make reasonable progress towards the national goal of preventing any future, and remedying any existing, anthropogenic impairment of visibility, including regional haze, in mandatory Class I Federal areas (Class I areas). We are disapproving Colorado's 2022 regional haze SIP revision pursuant to the CAA and regulatory regional haze requirements. The EPA is not taking final action at this time on a separate revision to Colorado's SIP that consolidates existing, previously approved regional haze provisions into the same regulation where Colorado's new, second planning period provisions are located.

**DATES:** This rule is effective on February 25, 2026.

**ADDRESSES:** The EPA has established a docket for this action under Docket ID No. EPA–R08–OAR–2024–0607. All documents in the docket are listed on the *https://www.regulations.gov* website. Although listed in the index, some information is not publicly available, *e.g.,* CBI or other information whose disclosure is restricted by statute. Certain other material, such as copyrighted material, is not placed on the internet and will be publicly available only in hard copy form. Publicly available docket materials are available through *https://www.regulations.gov,* or please contact the person identified in the **FOR FURTHER INFORMATION CONTACT** section for additional availability information.

**FOR FURTHER INFORMATION CONTACT:**
Jaslyn Dobrahner, Air and Radiation Division, EPA, Region 8, Mailcode 8ARD–IO, 1595 Wynkoop Street, Denver, Colorado 80202–1129, telephone number: (303) 312–6252; email address: *dobrahner.jaslyn@epa.gov.*

**SUPPLEMENTARY INFORMATION:**
Throughout this document ''we,'' ''us,'' and ''our'' means the EPA.

### Table of Contents

I. What is being addressed in this document?
II. Background
III. Summary and Analysis of Major Issues Raised by Commenters
IV. Final Action
V. Statutory and Executive Order Reviews

## I. What is being addressed in this document?

The EPA is disapproving a SIP revision submitted by the State of Colorado to the EPA on May 20, 2022, and supplemented on August 2, 2022, and June 23, 2023 (Colorado's 2022 regional haze SIP revision), addressing the requirements of the second implementation period of the RHR.[1] The EPA is disapproving Colorado's 2022 regional haze SIP revision pursuant to CAA section 169A and regulatory regional haze requirements. Under CAA section 110(k)(3), the EPA can only approve a SIP revision if it meets all applicable requirements of the Act.[2] If the EPA concludes that a SIP revision does not meet all applicable CAA requirements, then the EPA has the authority to fully disapprove that revision.[3] The analysis in this notice explains the flaws with the unconsented source closure of Nixon Unit 1 at the Ray D. Nixon Power Plant and why it requires a full disapproval. We find that Colorado's 2022 regional haze SIP revision does not meet the requirements of CAA section 110(a)(2)(E)(i)[4] because Colorado did not provide necessary assurances that the unconsented source closure of Nixon Unit 1 at the Ray D. Nixon Power Plant would not result in a taking pursuant to the U.S. Constitution.[5] After Colorado submitted its 2022 regional haze SIP revision to EPA, Nixon Unit 1 informed the State that it would not consent to closure and raised concerns about the lawfulness of forcing a closure and the impacts of such a closure on electricity supply in the State. Whenever a state learns that a source no longer intends to close as contemplated by the submitted SIP, it is incumbent on that state to take appropriate steps which could include revising or supplementing the SIP, withdrawal, or providing EPA with necessary assurances that the closure would not violate federal or state law.

Under these circumstances and for the additional reasons set out below, the EPA need not and cannot simply defer to the State's position in their comment letter that "no action before EPA results in a taking" and therefore the 2022 regional haze SIP revision would not violate federal or state law, including the U.S. Constitution, the Colorado Constitution, and applicable provisions of the Act.[6]

The EPA also finds that Colorado's 2022 regional haze SIP revision does not meet the requirements of CAA section 169A(b)(2)[7] and the RHR at 40 CFR 51.308(f) because the unconsented source closure of Nixon Unit 1 was included in Colorado's long-term strategy, rendering the long-term strategy similarly unapprovable. Without Colorado addressing the inclusion of an unconsented closure without the necessary assurances, the EPA cannot approve Colorado's long-term strategy. Therefore, consistent with CAA section 110(k)(3), the EPA is fully disapproving Colorado's 2022 regional haze SIP revision.

We note that Colorado did not provide flexibility in its long-term strategy to take into account the possibility of changing circumstances that may impact whether a source consents to closure, including changes in electricity demand and supply. For example, Colorado's recent decision (after the State's public comment process and after the EPA issued the proposed rule) to withdraw source closure provisions[8] from the list of enforceable closure deadlines demonstrates not only the possibility, but the reality, that changing circumstances necessitated a more flexible strategy.[9] Colorado did not address this issue in withdrawing the additional unit and did not revise and resubmit an updated long-term strategy.

Because the EPA is fully disapproving Colorado's 2022 regional haze SIP revision, a federal implementation plan (FIP) or an approved SIP revision will be required to satisfy CAA and regional haze rule requirements.[10] The FIP or SIP revision will need to fully address the second implementation period regulatory requirements, including revisions to Colorado's long-term strategy and reasonable progress goals. The EPA further observes that upon Colorado's withdrawal of Commanche Unit 2's closure from Colorado's 2022 regional haze SIP revision, Colorado did not address the impact of the withdrawal on Colorado's previously submitted analysis of its reasonable progress goals as they relate to the Uniform Rate of Progress (URP). This will also need to be addressed in the FIP or SIP revision.

In this final rule, the EPA is not acting on a separate revision to Colorado's SIP that consolidates existing, previously approved regional haze provisions in Regulation Number 3 to the newly adopted Regulation Number 23 where Colorado's new, second planning period provisions are located. We will finalize action on that separate revision as appropriate in the future.

As required by CAA section 169A, the RHR implements a program to manage visibility impairment from man-made air pollution affecting 156 mandatory Class I areas. The RHR requires the states, in coordination with the EPA, the National Park Service, the Fish and Wildlife Service, the Forest Service, and certain other interested parties, to develop and implement a periodic SIP revision addressing the requirements of the CAA and the RHR. Visibility impairing pollutants include fine and coarse particulate matter (PM) (*e.g.,* sulfates, nitrates, organic carbon, elemental carbon, and soil dust) and their precursors (*e.g.,* sulfur dioxide ($SO_2$), oxides of nitrogen ($NO_X$), and, in some cases, volatile organic compounds (VOC) and ammonia ($NH_3$)). As discussed in further detail in our proposed rule, this preamble, and the accompanying Response to Comments (RTC) document, the EPA finds that Colorado's 2022 regional haze SIP revision fails to meet applicable requirements as is required to exercise our authority to approve the revision— and thereby make the elements included in the revision federally enforceable— under CAA section 110(a)(2). Colorado's 2022 regional haze SIP revision and the RTC document can be found in the docket for this rulemaking.

---

[1] On November 20, 2025, Colorado withdrew the SIP measures associated with the closure of Comanche Unit 2 that were initially included as part of Colorado's long-term strategy and found in Regulation Number 23, Part A, Section IV.F.1.d. Therefore, the SIP measures associated with the closure of Comanche Unit 2 are no longer part of Colorado's 2022 regional haze SIP revision. The post-proposal withdrawal of the enforceable closure deadline for Comanche Unit 2 is discussed where appropriate in this preamble and could not, under the circumstances, have been taken into account when the EPA issued the proposed rule on July 16, 2025.

[2] 42 U.S.C. 7410(k)(3).

[3] *Id.*

[4] 42 U.S.C. 7410(a)(2)(E).

[5] Throughout this document and the response to comment (RTC) document, we extend "Nixon Unit 1" to also include the associated Nixon coal handling facility.

[6] *See* Docket ID No. EPA–R08–OAR–2024–0607–0059 at 29–35.

[7] 42 U.S.C. 7410(a)(2)(E).

[8] On November 20, 2025, Colorado withdrew the SIP measures associated with the closure of Comanche Unit 2 that were initially included as part of Colorado's long-term strategy and found in Regulation Number 23, Part A, Section IV.F.1.d.

[9] Further, although not included as a required closure in this rulemaking, the Department of Energy (DOE) issued an order under section 202(c) of the Federal Power Act on December 30, 2025, to take all measures necessary to ensure that Unit 1 of Craig Station in Craig, Colorado is available to operate. *See* https://www.energy.gov/documents/federal-power-act-section-202c-craig-order-no-202-25-14. This authority requires DOE to find that an emergency exists related to heightened demand for, or a shortage in supply of, electricity and that the order will best meet the emergency and service the public interest. *See* 16 U.S.C. 824a(c).

[10] *See* 42 U.S.C. 7410(c).

## II. Background

On May 20, 2022, Colorado submitted a revision to its SIP to address its regional haze obligations for the second implementation period (2018–2028). Colorado supplemented the SIP revision on August 2, 2022, and June 23, 2023. Colorado submitted this SIP revision to satisfy the requirements of the CAA's regional haze program pursuant to CAA sections 169A and 169B and 40 CFR 51.308.

On July 16, 2025, the EPA proposed to partially approve and partially disapprove Colorado's 2022 regional haze SIP revision.[11] The July 16, 2025 proposed rule provided background on the requirements of the CAA and RHR, a summary of Colorado's regional haze SIP revisions and related EPA actions, and our rationale for the proposed rule. Specifically, we proposed approval for the portions of Colorado's 2022 regional haze SIP revision relating to: 40 CFR 51.308(f)(1): calculations of baseline, current, and natural visibility conditions, progress to date, and the uniform rate of progress; 40 CFR 51.308(f)(2)(ii)–(iv): long-term strategy; 40 CFR 51.308(f)(3): reasonable progress goals; 40 CFR 51.308(f)(4): reasonably attributable visibility impairment; 40 CFR 51.308(f)(5) and 40 CFR 51.308(g): progress report requirements; 40 CFR 51.308(f)(6): monitoring strategy and other implementation plan requirements; and 40 CFR 51.308(i): FLM consultation. For the reasons described in the proposed rule, we also proposed to disapprove portions of Colorado's 2022 regional haze SIP revision relating to 40 CFR 51.308(f)(2)(i). As relevant here, we proposed that Colorado's 2022 regional haze SIP revision does not meet the requirements of CAA section 110(a)(2)(E)(i) because the State included an unconsented source closure deadline for a currently operating unit without providing necessary assurances that the enforceable closure deadlines are consistent with federal and state law. We specifically proposed that Colorado failed to provide necessary assurances that unconsented source closures, including that of Nixon Unit 1, would not result in a taking in violation of the U.S. Constitution and/or comparable provisions of the Colorado Constitution or otherwise violate the CAA. Concurrently, we also proposed to approve a separate revision to Colorado's SIP that consolidates existing, previously approved, regional haze provisions into Regulation Number 23, the same regulation where Colorado's new, second planning period provisions are located. The public comment period closed on September 15, 2025.

More than two months after the comment period closed, on November 20, 2025, Colorado withdrew the SIP measures associated with the closure of Comanche Unit 2 that were initially included as part of Colorado's long-term strategy and found in Regulation Number 23, Part A, Section IV.F.1.d. These measures would have required the closure of Comanche Unit 2 by a date certain, and approval of the SIP measures by the EPA would have made the closure deadline federally enforceable for purposes of the Act. Because of Colorado's withdrawal of this portion of the SIP revision, the SIP measures associated with the closure of Comanche Unit 2 are no longer part of Colorado's 2022 regional haze SIP revision.

## III. Summary and Analysis of Major Issues Raised by Commenters

During the public comment period, the EPA received 29 comment submissions on the proposed rule; eight sets of comments in support and 20 sets in opposition.[12] The full text of comments received is included in the publicly posted docket associated with this rulemaking at *https://www.regulations.gov.* Below we provide brief summaries of some of the significant comments received and our responses. Our RTC document, which is also included in the docket for this rulemaking, provides detailed responses to all significant comments received and is a part of the administrative record for this action.

### A. Unconsented Source Closures

During the public comment period, the EPA received comments supporting and opposing the proposal that Colorado failed to provide necessary assurances that unconsented enforceable source closures would not be prohibited by state or federal law, as required by CAA section 110(a)(2)(E). The EPA posited that the forced and unconsented closure of operating sources, without just compensation, could violate the Takings Clause of the U.S. Constitution and possibly comparable provisions of state law, and that Colorado has not provided necessary assurances that such violations would not occur.

Commenters in support of our proposed disapproval agreed with our finding that enforceable unconsented source closure provisions, without just compensation, could violate the Takings Clause of the U.S. Constitution and possibly comparable provisions of state law, and that Colorado has not provided the necessary assurances to the contrary. A commenter in support of the proposal stated that forcing a municipality-owned utility to close against its will may constitute an unlawful taking and deprives the municipal owner and its ratepayers of investment-backed expectations. According to another commenter in support, disapproval of enforceable closure provisions avoids potential Takings Clause challenges. During Colorado's public hearing process, Colorado also received similar comments from utilities when Colorado contemplated accelerating "voluntary" source closure provisions such that the closures would no longer be consensual.[13] The utilities stated that forced early closures confiscate "economical value and strips the units' owners of the productive use of their property" resulting in a taking of the utilities' rights and property interests under the federal and Colorado constitutions.[14] Although the State did not accelerate the "voluntary" source closure provisions at the time, Colorado was on notice that unconsented source closures constitute a "takings". Therefore, Colorado appeared to have dismissed the takings concern for unconsented closures in the State's comments to our proposed rule.[15]

We agree with these comments in support of disapproving the SIP revision for containing unconsented source closure provisions. For Nixon Unit 1, approving the SIP revision that requires its unconsented closure could harm the municipality-owned public utility and its citizen ratepayers by destroying the value of the Unit and investments made in the Unit. Notably, both the municipality (directly) and citizen ratepayers (through rates that include contributions to long-term capital costs) continue to invest in the ongoing operation of the Unit that would, if the SIP revision were approved in this respect, be forced to close under federal law. Without the necessary contrary assurances from Colorado, the commenters correctly note the State's 2022 regional haze SIP revision does not meet the requirements of CAA section

---

[11] 90 FR 31926 (July 16, 2025).

[12] One comment was not considered due to the presence of profanity.

[13] *See* Docket ID No. EPA–R08–OAR–2024–0607–0004; 14_Public Service Company of Colorado dba Xcel Energy at 23; 14_Platte River Power Authority at 24; 14_Tri-State Generation & Transmission Association Inc at 41; and 14_City of Colorado Springs & Colorado Springs Utilities at 33.

[14] *Id.*

[15] *See* Docket ID No. EPA–R08–OAR–2024–0607–0059 at 29–35.

110(a)(2)(E)(i), and thus the EPA cannot approve the SIP.

Commenters opposing our proposed disapproval of Colorado's 2022 regional haze SIP revision asserted that disapproving a SIP based on lack of necessary assurances under CAA 110(a)(2)(E) would be unlawful, speculative, arbitrary, and capricious. Commenters stated that a disapproval based on CAA section 110(a)(2)(E)(i) would be arbitrary and capricious because, among other reasons, Colorado has a reliance interest in the RHR and guidance that commenters understood as supporting the ability of a state to include enforceable source closure deadlines as part of its long-term strategy for regional haze SIPs. Additionally, commenters emphasized that when a state includes ''voluntary'' requirements in a SIP, it is unreasonable for states to consider a potential violation of the Takings Clause. Commenters represented that the necessary assurances argument mischaracterizes closure deadlines as forced or unconsented, and thus that the EPA failed to provide a legal rationale for requiring Colorado to provide necessary assurances that a ''voluntary'' closure deadline would not violate the Takings Clause.

On the takings argument, specifically, commenters argued that ''voluntary'' closure deadlines do not conform with the Supreme Court's analysis in *Penn Central Transportation Co.* v. *New York City,* 438 U.S. 104 (1978) or *Lucas* v. *South Carolina Coastal Council,* 505 U.S. 1003 (1992). Further, commenters stated that without specific facts about each of the closures, our analysis is speculative, arbitrary, and capricious. Commenters asserted that our reliance at proposal on *per se* takings case law is misplaced because the closures are not permanent physical intrusions and do not deprive owners of their properties' complete economic value. As for regulatory takings, commenters stated that we failed in the proposed rule to consider the *Penn Central* factors.[16]

Commenters also challenged the EPA's authority to decide constitutional questions, stating that the analysis of the Takings Clause is a matter of judicial review. Finally, commenters questioned the EPA's disapproval of a closure requirement that already exists and will continue to exist under state law, *i.e.,* before and separately from whether the EPA's approval makes the closure deadlines federally effective and enforceable.

We disagree with the comments questioning the EPA's authority to consider issues involving the Takings Clause under CAA section 110(a)(2)(E)(i). CAA section 110(a)(2)(E)(i) provides that state plans must provide ''necessary assurances'' that the state ''is not prohibited by any provision of federal or state law from carrying out such implementation plan or portion thereof.'' The best reading of this provision is that the EPA lacks authority to approve a SIP revision that risks implementation of a SIP in a way that is prohibited by federal or state law, and for which the state has not provided necessary assurances that a prohibited action will not occur. The Takings Clause of the Fifth Amendment, applicable to the states via the Fourteenth Amendment, provides that the government shall not take private property, including a municipality-owned public utility property such as Nixon Unit 1,[17] for public use without just compensation. Under the CAA's cooperative-federalism framework, states can determine what emission limits and other measures to include in their SIPs as long as they meet the requirements of the Act.[18] However, those state-selected measures must observe statutory and constitutional limits, as contemplated by the text of CAA section 110(a)(2)(E). Thus, in this case, while a constitutional issue is implicated, the fundamental issue is that the SIP revision record lacks necessary assurances under CAA Section 110(a)(2)(E)(i). In this context, the EPA disagrees with comments stating that ensuring the requirements of the CAA are satisfied, including the requirement that state plans are supported by necessary assurances regarding compliance with the law, is not within or relevant to the EPA's authority. We are not adjudicating constitutional claims in this final rule. Rather, we are ensuring that our exercise of authority to approve or disapprove the SIP revision before us, thereby making it enforceable as a matter of federal law, is consistent with applicable requirements and limitations on the EPA's authority.

The EPA disagrees with comments alleging that we improperly characterize Nixon Unit 1 as an unconsented closure and thus that we failed to provide a proper legal rationale requiring Colorado to provide necessary assurances that a ''voluntary'' closure deadline, such as Nixon Unit 1, could violate the Takings Clause. At proposal, we stated ''that Colorado has not provided the assurances required by CAA section 110 that implementing the SIP's forced closure provisions (Nixon Unit 1) is not prohibited by state or Federal law. . . . There is a risk that enforceable source closure provisions, without just compensation, would violate the Takings Clause and possibly comparable provisions of state law.'' [19] We defined a ''forced closure'' as a ''source closure opposed by the source in question that would be made federally enforceable as a result of a SIP approval.'' [20] Further, we defined Nixon Unit 1 as a ''forced'' or unconsented closure given the documentation [21] provided to the EPA and Colorado by the municipal owner of Nixon Unit 1 withdrawing their consent to the closure provisions contained in Colorado's 2022 regional haze SIP revision. In addition, we invited comment on whether there were any prior state SIP revisions under CAA section 110 that sought to force the closure of a currently operating source without that source's consent.[22] We did not receive any comments providing any such examples. Thus, after considering the comments received, and as explained further in this section and the RTC document, we disagree with commenters' position that Nixon Unit 1 is a ''voluntary'' closure. Therefore, Colorado is required to provide the necessary assurances that the unconsented Nixon Unit 1 closure provision, without just compensation, would not violate the Takings Clause and comparable provisions of state law as required by CAA section 110(a)(2)(E)(i). We note that the facts presented in this case, where the SIP revision would force a closure clearly opposed by the source, are novel. For that reason, it is understandable that Colorado's submission has generated novel concerns.

The EPA also disagrees with commenters' position that a disapproval

---

[16] *See Penn Cent.,* 438 U.S. at 124–5. The Court enumerated three factors to consider based on the specific facts of the case in determining if a government regulation goes too far and amounts to an unconstitutional ''taking'' of private property, requiring compensation under the Fifth Amendment. These factors are (1) economic impact on the owner; (2) owner's investment-backed expectation; and (3) character of the government action.

[17] Municipally owned public utilities are not-for-profit power providers run by local governments, serving their communities directly. While municipality-owned public utilities hold physical property for public purposes, they still possess property rights. If a higher government authority deprives the use of that property though regulatory action, the Fifth Amendment still requires just compensation to the community-owned utility.

[18] *Train* v. *Natural Resources Defense Council,* 421 U.S. 60, 79 (1975).

[19] 90 FR 31926, 31938 (July 16, 2025).
[20] *Id.*
[21] *Id.* Please see docket for correspondence from Colorado Springs Utilities, owner of Nixon Unit and our proposal discussing Colorado Springs Utilities' correspondence.
[22] *Id.*

based on CAA section 110(a)(2)(E)(i) would be unlawful or arbitrary and capricious. Commenters emphasized that when Colorado adopted its SIP, the utilities had already planned to close the sources in question on the schedule included in the SIP. According to these commenters, the SIP reflects that the utilities voluntarily decided to close specific units and Colorado relied on the utilities' decisions when it codified the closures as state regulations. Therefore, commenters opine that, at the time, Colorado would not have known to provide necessary assurances that an unconsented source closure would not amount to a taking without just compensation. However, after Colorado submitted its SIP revision to the EPA and prior to us acting on Colorado's SIP revision, Colorado Spring Utilities (CSU), a municipality-owned public utility, retracted its decision to voluntarily close Nixon Unit 1 via a letter to Colorado dated March 11, 2025. CSU explained that it was facing challenges ''to secure adequate replacement energy to offset the loss of 208 megawatts of generating capacity resulting from the voluntary planned retirement of [Nixon Unit 1] as well as putting the Colorado Department of Public Health and Environment (CDPHE) on notice of Colorado Springs Utilities' urgent need to defer the closure of Nixon Unit 1 due to these unforeseen challenges.'' [23] In addition, CSU met with Colorado on April 23, 2025, and asked Colorado to remove the December 29, 2029 closure of Nixon Unit 1 from its SIP revision amid concerns regarding grid reliability.[24]

On April 2, 2025, CSU submitted similar documentation to the EPA, asking us not to act on Colorado's 2022 regional haze SIP revision December 29, 2029 closure provision for Nixon Unit 1.[25] Once the EPA and Colorado obtained documentation that the owner of Nixon Unit 1 withdrew their consent for their respective enforceable closure provisions contained in Colorado's 2022 regional haze SIP revision, the EPA and Colorado were on notice that approving Colorado's 2022 regional haze SIP revision with the inclusion of an unconsented closure date into the SIP could result in violation of a federal requirement. In addition, with CSU's withdrawal of its consent to close Nixon Unit 1 set out in Colorado's 2022 regional haze SIP revision, the closure provision for Nixon Unit 1 in Colorado's 2022 regional haze SIP revision became an unconsented closure provision and it was incumbent upon Colorado to provide the necessary assurances that the unconsented source closure would not amount to a taking without just compensation upon implementation of Colorado's 2022 regional haze SIP revision.[26] Without any representations from Colorado to the contrary, it is not possible for the EPA to determine that it may approve Colorado's 2022 regional haze SIP revision as meeting all applicable requirements of the Act because the submission does not contain necessary assurances that Colorado ''is not prohibited by any provision of Federal . . . law'' from executing an unconsented source closure with the imprimatur of federal approval. Colorado's 2022 regional haze SIP revision is not compliant with all applicable requirements of the CAA and, because of that defect, also does not meet the requirements of 40 CFR 51.308(f). As a result, the EPA is disapproving Colorado's 2022 regional haze SIP revision.

Moreover, the EPA disagrees with commenters' representations that the lack of the necessary assurances required by the CAA is not a lawful basis to disapprove the unconsented source closure on the ground that the disapproval would conflict with the RHR and a 2019 guidance document.[27] Nor would it be unreasonable to expect that Colorado consider potential takings clause violations at the time the State included the source closures in the SIP. Specifically, commenters state that the RHR provides for the consideration of additional factors, including source retirement and replacement schedules.[28] Similarly, according to commenters, the 2019 guidance document describes that a state can shorten the remaining useful life of a source for purposes of a control analysis to account for an announced retirement but only if the state makes the retirement federally enforceable. But source retirement and replacement is much different from enforceable, unconsented closures, which neither the RHR nor the CAA's regional haze provisions reference or contemplate in any manner. Moreover, the guidance document referenced by commenters does not address the situation here or contain statements that reasonably could be understood to endorse Colorado's novel assertions that the EPA must allow states to use the CAA's regional haze provisions to force source closures. Rather, the guidance states that ''*[i]f* a source is expected to close by December 31, 2028, under an enforceable requirement, a state may consider that to be sufficient reason'' not to select the source for developing emission controls for the remaining useful life of the source.[29] Nothing in the guidance suggests that states may force unconsented closures as part of a regional haze SIP itself. As noted previously, commenters did not identify any instance where a state has attempted this use of the CAA's regional haze provisions or an instance where the EPA has approved a SIP revision under similar circumstances. Circumstances change, and insisting on unconsented plant closures under these circumstances threatens violations of federal and state law, including additional CAA provisions instructing states and the EPA to account for the consequences of requirements adopted to promote regional haze goals.

Even if Colorado had a legitimate reliance interest in the RHR and the 2019 guidance document and shortened the remaining useful life of a source in its control analysis accordingly, the commenters fail to address that a SIP containing an *unconsented* shortened remaining useful life for a source does not meet all the requirements of the CAA, including ensuring that a SIP or SIP revision includes necessary assurances consistent with CAA section 110(a)(2)(E)(i). The EPA can only approve a SIP revision if it meets all the requirements of the CAA.[30] This includes ensuring that the SIP contains the necessary assurances under CAA 110(a)(2)(E)(i) that the implementation of the SIP is not prohibited by federal or state law, including here, prohibitions on uncompensated takings of property interests without consent. Without these assurances, the EPA lacks authority to approve Colorado's 2022

---

[23] Letter from Travas Deal, CEO, Colorado Spring Utilities, to Jill Hunsaker Ryan, Executive Director, Colorado Department of Public Health and Environment. (March 11, 2025). Available in the docket for this rulemaking at Docket ID No. EPA–R08–OAR–2024–0607–0026.

[24] *See* 90 FR 31926, 31938 (citing ''Overview of Colorado Springs Utilities meeting with CDPHE_April 23, 2025'').

[25] *See id.* (citing ''Colorado Springs Utilities meeting with EPA_April 2, 2025'').

[26] *See* 42 U.S.C. 7410(a)(2)(E)(i).

[27] Guidance on Regional Haze State Implementation Plans for the Second Implementation Period. *https://www.epa.gov/visibility/guidance-regional-haze-state-implementation-plans-second-implementation-period.* The EPA Office of Air Quality Planning and Standards, Research Triangle Park (August 20, 2019).

[28] 40 CFR 51.308(f)(2)(iv)(C).

[29] Guidance on Regional Haze State Implementation Plans for the Second Implementation Period at 20 (emphasis added); *see also id.* at 42 n.74 (providing further that this discussion applies ''if a source is *certain* to close . . . under an enforceable requirement, a state can reasonably consider that to be sufficient reason to remove the source from further analysis and reasonable progress consideration'') (emphasis added).

[30] 42 U.S.C. 7410(k)(3).

regional haze SIP revision containing unconsented closure provisions.

Additionally, some commenters stated that the EPA cannot disapprove a closure that exists pursuant to state law because the closure would still be legally required as a matter of state law, and an EPA disapproval does not change this fundamental fact. The EPA disagrees with these commenters' conclusion. Commenters' statements are unsupported and do not acknowledge that when the EPA approves a provision into a SIP, it becomes federally enforceable, including here with respect to the unconsented closure provisions. The EPA does not have the authority to approve and make federally enforceable an unconsented closure provision contained in a SIP without the necessary assurances that the unconsented closure provision does not violate federal law or state law.

Commenters asserted that when further changes to the SIP are appropriate, the correct mechanism for the SIP to reflect the new changes is for the state to submit a SIP revision, after the SIP is approved by the EPA. In addition to the reasons stated above, the EPA disagrees with commenters' statements that the appropriate way to address Nixon Unit's 1 unconsented closure is for EPA to approve the SIP containing an unconsented closure followed by a SIP revision to remove the unconsented closure. It is correct that states can subsequently revise provisions that are already approved as part of a SIP. However, because the EPA has not acted on Colorado's 2022 regional haze SIP revision and the EPA cannot approve a SIP or SIP revision containing an unconsented closure because it does not meet the CAA requirements, revising an approved SIP is not an option. Based on the facts of this action, Colorado would have the following options: supplement the existing 2022 regional haze SIP revision, or withdraw its 2022 regional haze SIP revision and submit an amended regional haze SIP revision.[31] Once Colorado was notified by the owner of Nixon Unit 1 that they no longer consented to their respective closure provisions in Colorado's 2022 regional haze SIP revision, it was incumbent upon Colorado to supplement the SIP revision either by removing the closures or by providing the necessary assurances required by CAA section 110(a)(2)(E). As Colorado did neither, as previously explained, the EPA must disapprove Colorado's 2022 regional haze SIP revision. We note that the same options would apply with respect to other sources that notify Colorado that they no longer consent to closure.

Finally, commenters pointed to the EPA's "inappropriate" reliance on *Cedar Point Nursery* v. *Hassid,* 594 U.S. 139 (2021) and *Horne* v. *Department of Agriculture,* 576 U.S. 351 (2015)—involving physical per se takings—to argue that a taking cannot occur when a source voluntarily agrees to a closure and that the cases are inapplicable to the circumstances in Colorado, positing that there is not a physical or *per se* taking. But commenters mischaracterized the EPA's mention of these cases in the proposal. The EPA stated that approval of Colorado's 2022 regional haze SIP revision "could amount to a *per se* taking," as established by the U.S. Supreme Court precedent.[32] Moreover, commenters misunderstand these cases. *Cedar Point Nursery,* for example, established that a *per se* taking may occur when the government deprives property owners of exclusive rights to even a portion of their property, in that case, by forcing owners to allow union organizers onto the property for relatively brief periods. Commenters do not explain or point to necessary assurances provided by Colorado in the SIP revision record that enforcing an unconsented closure of a power plant would not similarly involve or amount to any form of *per se* taking.

Some commenters cited to *Lucas* v. *South Carolina Coastal Council* in support of their assessment that because the closure deadline that would become federally enforceable via an approval does not deprive the utility of "all economically beneficial or productive use of land," compensation would not be required under the federal Takings Clause.[33] But *Lucas* applies only to instances of total deprivation of use, and it relied on "background principles of State's law of property and nuisance," which are not the issues in this action.[34] The commenters shed no light on the type of taking at issue in the Colorado action and instead concluded that the forced closure does not give rise to a takings claim. We disagree with their position. An unconsented deadline to close Nixon Unit 1 is the equivalent to a *per se* taking, permanently restricting CSU's right over its property. It is also possible that a regulatory taking could occur if Nixon Unit 1 is considered a segment of its respective facility and the analysis of the forced closure is limited to each independent unit.

We recognize the U.S. Supreme Court's determination that there are only two categories of action that can result in a *per se* taking: (1) where the government requires an owner to suffer a permanent physical invasion of property, and (2) when regulations completely deprive an owner of "all economically beneficial us[e]" of property.[35] In this case, we disagree with commenters that because *Horne* and *Cedar Point* involve physical takings, they are inapplicable. Under the Court's jurisprudence, a physical taking occurs when the government physically appropriates or occupies private property for public use. As explained below, the Court in *Horne* and *Cedar Point* addressed questions that are pertinent to the facts at issue in the Colorado action.

According to commenters, closure deadlines are not a physical appropriation of property for various reasons, including the fact that the closure deadline applies to Nixon Unit 1 and not the facility as a whole. In *Cedar Point,* a government regulation restricted an owner's "right to exclude" from the owner's property.[36] The Court emphasized the importance of this right, and how the appropriation of the right to physically invade private property requires compensation.[37] Because incorporating the unconsented closure for Nixon Unit 1 into the SIP would make the unconsented closure federally enforceable, this would cause the regulation to appropriate CSU's right to control the operation of its facility. The CAA and RHR do not require sources to close to meet reasonable progress. Forcing CSU to close Nixon Unit 1 would deprive CSU of the control and use of its property in order to meet Colorado's purpose. The forced closure of Nixon Unit 1 would lead to its decommissioning, causing a permanent restriction on CSU's property and causing economic harm to the municipality-owned public utility and its citizen ratepayers.

In *Horne,* the Court determined that whenever there is a physical appropriation, it is not right to question whether the appropriation deprives the owner, whether private entity or local government, of all economically valuable use of the item taken.[38] This question was also addressed in *Tahoe,* where the Court determined that if the government takes possession of an interest in property for public purpose, "it has a categorical duty to compensate

---

[31] *See generally* 42 U.S.C. 7410.
[32] 70 FR 31926, 31939 (July 16, 2025).
[33] 505 U.S. 1003 (1992).
[34] *Id.* at 1029.
[35] *See Horne,* 576 U.S. 351; *Tahoe-Sierra Pres. Council, Inc.* v. *Tahoe Reg'l Planning Agency,* 535 U.S. 302, 330 (2002) (citing *Lucas,* 505 U.S. at 1019–20).
[36] *Cedar Point Nursery,* 594 U.S. 139.
[37] *Id.* at 158.
[38] *Horne,* 576 U.S. at 363.

the former owner, regardless of whether the interest that is taken constitutes an entire parcel or merely a part thereof.'' [39] Similarly, the unconsented closure of Nixon Unit 1 would force the utility to change operating conditions by forcibly decommissioning Nixon Unit 1—which would be comparable to the government deciding how to dispose of the goods set aside in *Horne*—even though a source closure is not a statutory or regulatory requirement under CAA section 169A and 40 CFR 51.308(f). Thus, the EPA disagrees with commenters' proposition that *Cedar Point* and *Horne* are inapplicable to the unconsented closure of Nixon Unit 1 in Colorado's 2022 regional haze SIP revision.

As already discussed, it is reasonable to conclude that the facts at issue involve a *per se* taking. Therefore, the framework of *Penn Central*,[40] which governs regulatory takings, is likely not directly relevant to this final action, as ''[i]t is 'inappropriate to treat cases involving physical takings as controlling precedents for the evaluation of a claim that there has been a ''regulatory taking,'' and vice versa.' '' [41] Nonetheless, for completeness, we also consider whether the unconsented closure of Nixon Unit 1, absent necessary assurances under CAA Section 110(a)(2)(E)(i), could constitute a regulatory taking.

Without necessary assurances under CAA Section 110(a)(2)(E)(i), there is no demonstration that neither a total nor partial regulatory taking will occur from implementation of the unconsented closure provision for Nixon Unit 1 contained in Colorado's 2022 regional haze SIP revision. Commenters point to the closure date only affecting a segment of Nixon and allowing for the operation of the rest of the facility and argue that therefore there is no total or partial regulatory taking. However, commenters misconstrue CSU's ownership of other sources (Front Range Power Plant, Solids and Handling Disposal Facility) as being part of the Ray D. Nixon Power Plant when in fact they are separate sources located on adjacent or contiguous property. The Ray D. Nixon Power Plant only consists of Unit 1 and associated coal handling and thus when evaluating whether there is a regulatory taking, the regulatory taking evaluation is limited to Nixon Unit 1 and should not include evaluation of Front Range Power Plant and Solids and Handling Disposal Facility as part of that as commenters do.

A total regulatory taking would occur if the closure would fully deprive the source owner of all economic use of the land under the standard described in *Lucas*.[42] ''The general rule at least is, that while property may be regulated to a certain extent, if regulation goes too far it will be recognized as a taking.'' [43] The U.S. Supreme Court has defined ''a regulation which 'denies all economically beneficial or productive use of land' will require compensation under the Takings Clause'' and is a ''regulation that goes too far.'' [44] Without necessary assurances under CAA Section 110(a)(2)(E)(i), it is not possible for the EPA to ensure that approval of Colorado's 2022 regional haze SIP revision will not constitute a regulatory taking under the U.S. Constitution, given the administrative record. For this reason, the EPA is authorized under the CAA to fully disapprove this SIP submission to avoid a takings situation. The effect of such a taking would result in permanent deprivation of property and would be a textbook example of a ''regulation going too far.'' [45]

A partial regulatory taking results when a regulation hinders the use of property but does not deprive the owner of all economically beneficial use. Here, the analysis involves considering whether the Nixon Unit 1 closure provision codified in federal regulation results in (1) a significant economic impact on the claimants; (2) interference with distinct investment-backed expectations; and (3) shares characteristics with similar governmental actions considered takings.[46] Based on Colorado's action as further described in section III.A and in the RTC document, without necessary assurances to the contrary, it is not possible for the EPA to ensure that approval of Colorado's 2022 regional haze SIP revision containing an unconsented closure provision will not constitute a partial regulatory taking under the U.S. Constitution, given the administrative record.

Additionally, building on the analysis earlier in this section, the EPA disagrees with commenters' conclusion that the *Penn Central* test does not support a determination that a partial regulatory taking would result if the EPA codified Colorado's unconsented closure provision for Nixon Unit 1. A use restriction may constitute a taking if not reasonably necessary to the effectuation of a substantial public purpose or if it has an unduly harsh impact upon the owner's use of the property.[47] First, contrary to commenters' statements, the purpose of the CAA's regional haze provisions is to address visibility impairment in Class I areas, not to address public health. Colorado determined that the closure of Nixon Unit 1 ''will satisfy and exceed [reasonable progress] requirements for this implementation period.'' [48] Therefore, even if the purpose of the closure is to promote ''general health, safety, and welfare,'' as stated by one commenter,[49] an unconsented closure falls outside the statutory and regulatory requirements of the regional haze program. Moreover, an unconsented closure of Nixon Unit 1 would negatively impact a municipality-owned public utility and its citizen shareholders/ratepayers from producing electricity on its property and could threaten grid reliability for CSU's customer base and negatively impact people, businesses, military installations, hospitals, and other services in CSU's service territory.[50]

Second, the economic impact of the government regulation ''is determined by comparing the total value of the affected property before and after the government action.'' [51] Here, if the EPA approves the Nixon Unit 1 unconsented closure deadline into the SIP, the closure would be federally enforceable, and the decommissioning of the Unit would diminish its economically beneficial use and value. Further, according to CSU, the moment CSU determined that a December 29, 2029 closure was no longer viable, the municipality's investment-backed expectations changed and the closure was no longer part of its business plan.[52] As this action demonstrates, many of the coal-fired electricity generating units in Colorado are closing.[53] If CSU is forced to close Nixon Unit 1 by December 29, 2029,

---

[39] *Tahoe-Sierra Pres. Council,* 535 U.S. at 323.
[40] *Penn Central,* 438 U.S. 104.
[41] *Tahoe-Sierra Pres. Council,* 535 U.S. at 323.
[42] *Lucas,* 505 U.S. at 1116.
[43] *Pa. Coal Co.* v. *Mahon,* 260 U.S. 393, 415 (1922).
[44] *Id.; see also Lucas,* 505 U.S. 1003; *Palazzolo* v. *Rhode Island,* 533 U.S. 606, 617 (2001).
[45] *Id.*
[46] *Penn Central,* 438 U.S. at 124.
[47] *Id.* at 127 (internal citation omitted).
[48] Colorado 2022 regional haze SIP revision at 53.
[49] *See* Docket ID No. EPA–R08–OAR–2024–0607–0062 at 5.
[50] Letter from Travas Deal, CEO, Colorado Spring Utilities, to Jill Hunsaker Ryan, Executive Director of Colorado Department of Public Health and Environment. (March 11, 2025). Available in the docket for this rulemaking at Docket ID No. EPA–R08–OAR–2024–0607–0026.
[51] *Colony Cove Props., LLC* v. *City of Carson,* 888 F.3d 445, 451 (9th Cir. 2018).
[52] Letter from Travas Deal, CEO, Colorado Spring Utilities, to Jill Hunsaker Ryan, Executive Director of Colorado Department of Public Health and Environment. (March 11, 2025). Available in the docket for this rulemaking at Docket ID No. EPA–R08–OAR–2024–0607–0026.
[53] Colorado 2022 regional haze SIP revision at 75.

CSU anticipates capacity deficits of 173 MW in 2030, increasing to 257 MW in 2034.[54] Thus, after considering the *Penn Central* factors in relation to the unconsented closure of Nixon Unit 1, it is not possible for the EPA to ensure that approval of Colorado's 2022 regional haze SIP revision will not constitute a partial regulatory taking under the U.S. Constitution. A partial regulatory taking violates Federal law and without the CAA Section 110(a)(2)(E)(i) necessary assurances to the contrary, the EPA does not have the authority to approve a SIP with an unconsented closure.

The EPA shall approve a SIP revision only if it meets all CAA requirements.[55] Given the necessary assurances requirement in CAA section 110(a)(2)(E)(i) and the withdrawal of consent from the municipal owner for closure of Nixon Unit 1, Colorado is required to provide necessary assurances to the EPA to ensure that implementation of Colorado's 2022 regional haze SIP revision containing an unconsented closure provision is not prohibited by Federal law including the Takings Clause of the U.S. Constitution. However, Colorado failed to provide the necessary assurances required by CAA section 110(a)(2)(E)(i) that approval of Colorado's 2022 regional haze SIP revision containing the unconsented closure provision for Nixon Unit 1 will not violate Federal law including an uncompensated taking *per se* or a partial or full regulatory taking. Because the Nixon Unit 1 closure is not approvable under CAA section 110(a)(2)(E)(i), we cannot approve Colorado's long-term strategy and are disapproving the SIP revision in its entirety.

The EPA further observes that upon Colorados's withdrawal of the closure of Commanche Unit 2 from the SIP submittal, Colorado did not address the withdrawal's impact on Colorado's previously submitted analysis of its reasonable progress goals as they relate to the URP. Furthermore, Colorado withdrew the closure without engaging in the State processes associated with the development of SIP revisions for submittal to the EPA for approval. These processes include providing for State-level notice and comment prior to the submission of a SIP revision to the EPA. As a result of this full disapproval, Colorado may now engage in those processes.

*B. Other Source Closures*

The EPA's final action disapproving Colorado's 2022 regional haze SIP revision is not based on Colorado's consideration of the energy impacts associated with the source closures. Nonetheless, we maintain that Colorado did not independently assess the source closures under the "energy and non-air quality environmental impacts of compliance" statutory factor including impacts on maintaining grid reliability and the utilities' ability to meet energy demand, particularly given the number of imminent source closures, as detailed in our proposed rule and in the RTC document.

Commenters point to information such as grid analyses performed by the Colorado Public Utilities Commission (PUC) or other utility boards, utility resource planning processes, statements from the utilities themselves, as well as the entities that have oversight and jurisdiction to review and approve electric utilities' plans as evidence that Colorado considered the "energy and non-air quality environmental impacts of compliance" statutory factor. The mere citation of analyses, reports, approvals, and associated materials from the Colorado PUC and other utility boards is not evidence that Colorado independently assessed the impact on grid reliability in Colorado from the totality of the retirements included in the SIP revision or that Colorado considered that information, with respect to the source closures, within the context of the "energy and non-air quality environmental impacts of compliance" statutory factor. Notwithstanding the reliance interests identified in this document, it is not reasonable for Colorado to ignore evaluating the energy impacts associated with the source closures for this SIP revision.

Contrary to some commenters' claims, instead of using the information from the Colorado PUC and individual utilities to evaluate the energy impacts of the source closures, Colorado only used that information to shorten the remaining useful life of the sources. In its November 2020 prehearing statement, Colorado states that "[t]he closure dates in this proposal are used within the four-factor analysis with regard to remaining useful life adjustments, not for any additional pollutant reductions that would be necessary to demonstrate reasonable progress in 2028 for this round." [56] In Colorado's comments on the EPA's proposed rule, Colorado further reiterated that it "used shortened remaining useful life for certain stationary sources for its reasonable progress determination based on information from utilities regarding voluntary, announced source retirements," and that "[t]he Closure Dates are incorporated into Colorado's 2022 SIP Submission as a means of limiting the sources' remaining useful life as required for the four-factor analyses." [57] As Colorado also stated in its comments on the EPA's proposed rule, Colorado's analysis with respect to the source closures "focused on source-specific issues" and "did not attempt an independent evaluation of broader grid reliability issues" associated with the thirteen source closures contained in Colorado's 2022 regional haze SIP revision.[58]

Despite the shortcomings in Colorado's analysis of grid reliability concerns, the EPA recognizes that our prior statements may have generated a reliance interest that led to how Colorado developed its SIP revision.[59] For example, the EPA's 2019 guidance document provided a limited scope of considerations generally involved under the "energy and non-air quality factor" and it was reasonable for Colorado to rely on the interpretation provided in that guidance—although the EPA's 2019 guidance document did not prohibit the consideration of grid reliability. Further, during the state-level public comment process, the EPA included in its public comments that, generally speaking, Colorado's rationale for the control determination should be based on the four-factor analysis and should "not rely on other factors such as grid reliability, future demand, etc. . . ." [60] While the EPA no longer believes that public comment was correct, it was also reasonable for Colorado to rely on the EPA's representation in that public comment letter. However, for any additional revisions to Colorado's SIP, the reliance issue would no longer apply as we no longer believe it is appropriate for Colorado to ignore grid reliability issues when meeting regional haze obligations.

Thus, recognizing Colorado's reliance interest in the EPA's prior representations, the EPA is not determining that Colorado's cursory grid reliability analysis is a reason to disapprove Colorado's 2022 regional haze SIP revision.

---

[54] Letter from Travas Deal, CEO, Colorado Spring Utilities, to Jill Hunsaker Ryan, Executive Director of Colorado Department of Public Health and Environment. (March 11, 2025). Available in the docket for this rulemaking at Docket ID No. EPA–R08–OAR–2024–0607–0026.

[55] 42 U.S.C. 7410(k)(3).

[56] *See* Docket ID No. EPA–R08–OAR–2024–0607–0004; 14_Air Pollution Control Division at 8.

[57] *See* Docket ID No. EPA–R08–OAR–2024–0607–0059 at 17 and 18.

[58] *Id* at 24.

[59] *See, e.g., Kentucky* v. *EPA,* 123 F.4th 447, 467–71 (4th Cir. 2025).

[60] *See* Docket ID No. EPA–R08–OAR–2024–0607–0011; 16_EPA Comments at 4.

Although the EPA is not disapproving Colorado's 2022 regional haze SIP revision on the basis of Colorado's lack of independent assessment of the source closures under the ''energy and non-air quality environmental impacts of compliance'' statutory factor, including impacts on maintaining grid reliability and the utilities' ability to meet energy demand, the concerns regarding grid reliability included in the proposal still hold true. The EPA recognizes that any source that previously decided to close could determine in the future that closure is no longer appropriate. As explained in the proposal, the demand for electricity is rising due to the resurgence of domestic manufacturing and the construction of artificial intelligence data processing centers. As noted in Executive Order 14241, power generated from coal resources is critical to addressing this surging demand and a matter of national interest, national security, and energy policy. The EPA does not encourage electric generating facilities to close in the face of this energy demand. Moreover, the EPA does not expect any state to encourage or force an electric generating facility to close in order to comply with the CAA's regional haze second planning period requirements.

If a source that previously consented to close changes its plans, the EPA expects Colorado to work collaboratively with the source and ensure that any future SIP revision accurately reflects the source's expected operations, in addition to the analyses required by the RHR.

## IV. Final Action

For the reasons stated in the RTC document and in this document, we are disapproving Colorado's 2022 regional haze SIP revision. A FIP or an approved SIP revision will be required to satisfy CAA and regional haze rule requirements.[61] In this action, the EPA is not taking final action on a separate revision to Colorado's SIP that moves the regional haze provisions in Regulation Number 3 to the newly adopted Regulation Number 23.

## V. Statutory and Executive Order Reviews

### A. Executive Order 12866: Regulatory Planning and Review

This action is exempt from review under Executive Order 12866 because it applies to only certain facilities in the State of Colorado.

---

[61] 42 U.S.C. 7410(c).

### B. Executive Order 14192: Unleashing Prosperity Through Deregulation

This action is not expected to be an Executive Order 14192 regulatory action because this action is not significant under Executive Order 12866.

### C. Paperwork Reduction Act (PRA)

This rule does not impose an information collection burden under the provisions of the Paperwork Reduction Act of 1995 (44 U.S.C. 3501 *et seq.*).

### D. Regulatory Flexibility Act (RFA)

I certify that this action will not have a significant economic impact on a substantial number of small entities under the RFA (5 U.S.C. 601 *et seq.*). This action will not impose any requirements on small entities. This action is disapproving SIP provisions that do not meet the requirements of CAA sections 110(a)(2)(E)(i) and 169A(b)(2) and the Regional Haze Rule at 40 CFR 51.308(f).

### E. Unfunded Mandates Reform Act (UMRA)

This action does not contain any unfunded mandate as described in UMRA, 2 U.S.C. 1531–1538, and does not significantly or uniquely affect small governments. The action imposes no enforceable duty on any State, local of Tribal governments or the private sector.

### F. Executive Order 13132: Federalism

This action does not have federalism implications. It will not have substantial direct effects on the States, on the relationship between the national government and the States, or on the distribution of power and responsibilities among the various levels of government.

### G. Executive Order 13175: Consultation and Coordination With Indian Tribal Governments

This rule does not have Tribal implications, as specified in Executive Order 13175. It will not have substantial direct effects on Tribal governments. Thus, Executive Order 13175 does not apply to this rule.

### H. Executive Order 13045: Protection of Children From Environmental Health and Safety Risks

This action is not subject to Executive Order 13045 because it is not 3(f)(1) significant as defined in Executive Order 12866, and because EPA does not believe the environmental health or safety risks addressed by this action present a disproportionate risk to children because it disapproves revisions to a State program that are inconsistent with statutory and regulatory requirements for the CAA and Regional Haze Rule.

### I. Executive Order 13211: Actions That Significantly Affect Energy Supply, Distribution, or Use

This action is not subject to Executive Order 13211 because it is not a significant regulatory action under Executive Order 12866. This action will not have a significant adverse effect on the supply, distribution or use of energy.

### J. National Technology Transfer Advancement Act

This rulemaking does not involve technical standards.

### K. Congressional Review Act

This action is subject to the Congressional Review Act (CRA), and the EPA will submit a rule report to each House of the Congress and to the Comptroller General of the United States. This action is not a ''major rule'' as defined by 5 U.S.C. 804(2).

### L. Judicial Review

Under section 307(b)(1) of the CAA, petitions for judicial review of this action must be filed in the United States Court of Appeals for the appropriate circuit by March 27, 2026. Filing a petition for reconsideration by the Administrator of this final rule does not affect the finality of this action for the purposes of judicial review nor does it extend the time within which a petition for judicial review may be filed and shall not postpone the effectiveness of such rule or action. This action may not be challenged later in proceedings to enforce its requirements. See CAA section 307(b)(2).

## List of Subjects in 40 CFR Part 52

Environmental protection, Air pollution control, Carbon monoxide, Greenhouse gases, Incorporation by reference, Intergovernmental relations, Lead, Nitrogen dioxide, Ozone, Particulate matter, Reporting and recordkeeping requirements, Sulfur oxides, Volatile organic compounds.

Dated: January 9, 2026.

**Cyrus M. Western,**

*Regional Administrator, Region 8.*

[FR Doc. 2026–01413 Filed 1–23–26; 8:45 am]

**BILLING CODE 6560–50–P**